This we'll hear today is Hamden v. Total Car Franchising Corp and Mr. Friedman, when you're ready, we'll hear from you. Yes, Your Honor, I'm Tom, and I'm actually the father of the late James Hartman, and I'm Tom Hamden v. Total Car Franchising Corp. Uh, who is this? I'm Tom, and I'm a franchisee from Hartman. Okay, you're Tom Winn? Yes. Okay, okay. All right, Mr. Winn, we'll hear from you. Good morning. May it please the Court, I'm Tom Winn representing Total Car Franchising, also known as Colors on Parade. This appeal involves the enforceability of restrictive covenants in agreements associated with an automotive surface restoration franchise. Like the typical franchise scenario, Total Car Franchising provided the know-how, proprietary materials, trade secrets, and, in fact, a customer base to set up Mr. Hamden in business. Total Car, like any franchiser, is extremely concerned about protecting itself against unfair competition and utilizes restrictive covenants to do so. The district court ruled that all of the restrictive covenants in the agreements are unenforceable, all of them. The court's fundamental rationale was that the covenants did not survive the expiration of the franchise term and were enforceable only in the event the franchise agreement terminated before the end of the term. The court drew an erroneous and unnecessary distinction between the terms expiration and termination. Before we get into all that, can I just see if we can get this narrowed a little bit? The non-competition clause is not being challenged on appeal. We are not challenging the court's ruling. So we have non-solicitation and non-disclosure. That's correct, Your Honor. And the non-solicitation was for two years after May 2011, which is passed now. That's correct, Your Honor. And no one has suggested in the record that that was being violated. It was just sought to be enforced. There's no evidence that there was actual solicitation. That's correct. That's correct, Your Honor. So now, why isn't that one moot? Well, the non-solicitation restriction would extend two years after the end of the agreement. And the end of the agreement was May 2011. That's correct, Your Honor. And May 2013 would be two years. That's correct, Your Honor. Now, there is a five-year statute of limitations on breaches of contract under Virginia law. Well, I'm not talking about – I'm talking about what relief you're going to get. Well, Your Honor, this was a declaratory judgment action. I understand, but you still have to have a controversy. Well, by striking the non-solicitation clause as it did, that issue is not moot. If total car franchising discovers within the limitations period that it has been damaged by solicitation activity that violates – That's hypothetical. There's no evidence now on the record. We agree that they solicited. And the solicitation clause is no longer in effect. Why are we getting into hypotheticals and possibilities? If there is a violation within the five years, you can come up and try to enforce it. Well, except we can't because the judge has ruled that that provision is unenforceable. And by striking that provision out of the gate in this declaratory judgment action, we have no remedy. Here we are in September. We're several months after May, and no one has evidence that there was solicitation going on. Why isn't that at peace? I mean, I don't understand why – Your Honor, if – We know exactly what they were doing. He's running this business of taking out dents. I don't know how many employees he has. It can't be that large. You know who's there. Why isn't this just moot? Well, Your Honor, if, for example, next month my client were to discover that it was losing a business, one of its customers, because of activity that occurred within that two-month time period, my client has no possible remedy for that violation. The court has struck the non-solicitation clause, rendered it unenforceable, and if evidence comes to light within the limitations period, we otherwise would have the right to pursue a claim against you. I can only find one place in all of these agreements where the word termination and expiration are used in the same sentence, and it reads, if the franchise agreement is terminated before its expiration date, dot, dot, dot. That doesn't indicate to me that those two words were to be interchangeably used. Your Honor, that is the only place that I can find those two terms, and I'm not suggesting that the terms are interchangeable or synonymous, but the term termination certainly embraces the concept of expiration. And I think if we need to look for context, if we look at Section 9 of the franchise agreement, it lays it out very, very clearly. The court focused on Section 8 of the franchise agreement, which deals with automatic termination upon default, and it is a termination of Hamden's rights under the agreement. It doesn't speak to the obligations. Obligations after termination are set forth in Section 9 of that franchise agreement, and the heading of that agreement specifically references termination, expiration, and non-renewal. But if you look at the first sentence of that clause, it speaks to if the agreement terminates for any reason. Clearly, by saying if the agreement terminates for any reason, in the context of termination, expiration, or non-renewal, the concept of termination for any reason is designed to embrace any type of termination. And that's the only thing that really makes any sense here. In a non-solicitation context, a franchisor is only concerned about solicitation at the end of the franchise term. The court's reading of this agreement would render that language, that clause, completely null and void, or did render it null and void, and the reading would be that a franchisee is only prohibited from soliciting during the term of the agreement. But during the term of the agreement, the franchisee is duty-bound and profit motive-bound to solicit. The only time that we could ever have an interest in restricting that type of solicitation is after the end of the franchise term. Which included a two-year period, which has expired now. Yes, that's correct, Your Honor. But again, if my client were to discover evidence of some breach that causes damage, any time within the limitations period, it could not pursue a claim. The clause has been rendered void. Again, we do not take issue with the non-competent clause. Now, what if we vacated that ruling as moot? Well, I don't believe it is moot. Vacated the ruling as moot? Well, Your Honor, this was a declaratory judgment action. But a declaratory judgment has to have a case or controversy. Well, the controversy at issue was whether or not Hamden could engage in solicitations. I understand, but we don't give advisory opinions. No court does. And we don't speculate. We have to have an actual controversy. And a declaratory judgment always depends on an actual controversy. Now, when you filed it, you may have had a controversy because you filed it within the two years. But after the two years and no evidence of solicitation, and nobody comes forward and says that there's been that, we're just giving you free advice. Well, Your Honor, and actually Mr. Hamden filed. It's not free. You're paying for it. But not very much. Mr. Hamden actually filed this lawsuit. It was a declaratory judgment action. We did not file this action. But, again, to the extent that the court's ruling turns on this distinction between expiration and termination, we think that that conclusion is incorrect from a literal perspective. Well, on the solicitation, you have a pretty good argument based on the language. It says, during the term of the franchise agreement, I'm looking at page 212 of the appendix. During the term of the franchise agreement, and for two years after its termination, or after its assignment, you agree that you won't directly or indirectly solicit or induce. And the term of the agreement is a defined term. It means 15 years in paragraph 2. And so it seems to me it's pretty clear that you can't end the non-solicitation before the two years after the term of the agreement. But I still have a problem in us addressing that issue. Well, our concern, Your Honor, is obviously the precedential value at issue in this case. Well, we don't decide cases for that. No, I understand that, Your Honor. But the court has issued a ruling that the non-solicitation clause is invalid because of this expiration-termination distinction that the court makes. There are scores of agreements with similar clauses at issue. It is not a moot issue for these two particular parties in this case because, again, if there is a violation, we have no possible remedy that we can pursue under those circumstances. I would add, Your Honor, that we have cited cases that have, you know, this is not a novel issue, this difference between termination and expiration. We have cited two cases, one from within the circuit and one from Kentucky. You don't need that. I mean, that language is common in this thing. It says during the term and thereafter. In another clause, you are stuck because it says if it's terminated before the end of the agreement, that one, it seems to me, the clause itself refers to a termination before. It absolutely does. But this clause for the solicitation, you have the benefit of that, it seems to me. And we conceded the court's ruling on that non-competition clause that includes termination prior to expiration. Same with the disclosure. During the term of the franchise agreement and thereafter, you agree not to communicate. And so it seems to me the term of the agreement is a defined term of 15 years in paragraph 2. Anyway. Well, I would agree, Your Honor, and if you look at the second sentence. Those are the only two clauses we're looking at, right? Solicitation and disclosure. Yes, Your Honor. The nondisclosure clause does have two sentences. And you quoted the first sentence of it. The second sentence is even clearer. It begins, if there is any termination of this agreement, you agree you will never use our confidential information. Well, except then now you're going to have to conclude termination there. Well, and again, we would submit that any means all under Virginia law and certainly is broad enough to embrace the concept of expiration as a form of termination. Do you think an argument could be made by you putting that two-year clause in there that you, in fact, limited your statute of limitations? No, I do not, Your Honor. I don't believe that. It simply brackets the time period during which Mr. Hamden is prohibited from making solicitations. It's a narrow period of time. It doesn't unduly burden him in terms of earning a living. But any violation that might happen during that time period, under Virginia law, we have a five-year statute of limitations to pursue a claim. So if we discover a violation after that two years, we can still pursue damages against Mr. Hamden, but for the court's ruling that the clause is voided based on this expiration termination distinction, which we would submit is not a correct distinction. And to that point, I would point out one item that I did not address in my brief, and that is just authority on this particular issue. We've cited two cases, of course. Also, 17A Amdur II on contracts, Sections 524 and 530 both say, a contract may also be terminated by the expiration of the time during which it is to remain operative. And it goes on further to say in Section 530, where a contract specifies the period of its duration, it terminates on the expiration of such period. So Mr. Hamden's counsel hasn't cited any law to the contrary to suggest that an expiration cannot be a form of termination. The court, I mean, the only logical conclusion. There's also a common sense in your favor. That is that the whole idea is to protect your franchise after your relationship ends for a period of time. And if it's protected for two years after pre-term termination, but not at the end of the termination, it doesn't sound like it makes much sense. But it probably could make the contract clearer. I would agree. I think, Your Honor, what happened below is I believe that the district court conflated the nondisclosure and nonsolicitation restrictions with that noncompetition clause that references termination prior to expiration of the contract. And that language simply does not appear in the nondisclosure or nonsolicitation clauses. It's just absent. And given the two severability clauses that are very broadly written in both the separate noncompete agreement and the franchise agreement, the fact that there were unenforceable noncompetition clauses in this agreement really has no bearing on the enforceability as to the nondisclosure and nonsolicitation clauses. One other point that I'd like to make, Your Honor. The court, in its sweeping pronouncement, struck all of these covenants not only on the issue of expiration versus termination, but also because Mr. Hamden was not engaged in paint restoration services. The only time that term arises is in connection with the noncompetition clause that has been ruled as invalid. That same language does not appear, paint restoration services, in the nondisclosure clause, and it does not appear in the nonsolicitation clause either. In fact, the word paint does not appear anywhere in the separate confidentiality agreement that includes the nondisclosure clause and the nonsolicitation clause. So we think that point is also erroneous. And finally, Your Honor, the judge below believed that it was significant that Mr. Hamden had returned some proprietary labels and brochures and so forth and essentially ruled that the nondisclosure clause was inapplicable because of that. Now, if you give him a fair, he said with respect to that, that had been complied with. And then the second part he ruled based on the construction of the clause. Thank you, Your Honor. All right. Mr. Dean. May it please the Court, my name is Rob Dean. I represent Devin Hamden. Mr. Hamden worked as a car repair technician for Colors on Parade for a 15-year period. At the end of his franchise, the district court was asked to rule whether the restrictive covenants contained in the two documents he signed at the beginning of his franchise, a franchise agreement and a noncompetition agreement that was expressly incorporated in the franchise agreement, were otherwise applicable to Mr. Hamden. And in doing so, filed a declaratory judgment action asking the court to so rule. The court decided first that the non-solicitation provision did not apply to Mr. Hamden. And we asked that the court affirm the lower court's decision with respect to the non-solicitation clause for three reasons. First, standing here today in September of 2013, as Judge Niemeyer has pointed out, the issue is now moot. Let me ask you this. I did press Mr. Wynn on that. But he has another case in Ohio against a franchisee for the same thing. And now the franchisee in Ohio says you're collaterally stopped to argue this because the court in Virginia ruled against you. Why isn't he entitled to have a correct or at least a reviewable interpretation of that contract, which was a viable issue at least in the beginning? Now his other argument is that he could discover the product of some solicitation and still sue. It may be that we have to address it. Yes, Judge. Dealing with first the issue of another pending case in Ohio. A case pending in Ohio, first of all, would not be bound by this court's decision with respect to Not race judicata. I'm talking about he being barred by collateral estoppel from arguing the case because he argued it once and lost it. Yes, Judge. And again, we would submit that there are over, as we know from the record, over 230 franchisees scattered in 38 states around the country that colors on parade overseas. And we don't have any evidence in the record that the franchise agreement that each franchisee signs is otherwise identical. So we would suggest first that the case in Ohio, as your honor pointed out in speaking with Mr. I just raised it as a curiosity. Nobody's briefed it. So I'm not sure you should spend all your time on that. Yes, Judge. And turning to the second issue about whether the statute of limitations has any sort of interplay with the two year non solicitation provision. If colors on parade were concerned about discovering evidence of violation of the non solicitation, it would have but failed to do so sought a preliminary injunction at the beginning of this case. It did not do that. Second, if colors on parade were concerned between the time of Judge Turk's order in August of last year and May of this year, during that time period that Mr. Hamden was otherwise committing a violation of non solicitation and they wanted to preserve that claim, they would have filed a motion to stay the order pending the appeal. Colors on parade failed to ask the court to stay their order pending the appeal. I think you're missing his whole argument. His argument is that it's not moot because he has a right to enforce that clause for a period of five years. And it could turn out that it needs to be enforced. He doesn't know now that it is one way or the other. But if he were to discover that he was damaged because of solicitation in violation of the clause, he has five years in which to bring a damage suit. And the argument is he would be precluded from that if we didn't address it. Yes, judge. In addressing that argument, we would say that because colors on parade did not move to stay the lower court's order, while the non compete clause or the non solicitation clause, the clock ran out in May, that order became the law of the case. And Mr. Hamden has acted in reliance on that order. Moreover, there is no evidence in this case that Mr. Hamden at any time ever violated the non solicitation clause until a federal federal judge said otherwise. And in fact, he refrained from working for a period of over nine months while waiting. Judge Turk ruled. You say that he then feel free to solicit your honor. We would argue that he was free to solicit after Judge Turk ruled because colors on risk, though. Right. Because if Judge Turk were this is still a pending case, and if it turned out that Judge Turk had committed an error, then the solicitation would violate the clause. Right, your honor. We would disagree. And the reason is because colors on parade agree. If we say Judge Turk was an error and the clause is enforceable. Then your client's going to be responsible for damages, your honor. We would suggest that Mr. Hamden would not be responsible for damages under those circumstances. The reason being is that Judge Turk's order was the law of the case because colors on parade did not move to stay that order pending the appeal. It had every right to do so. And oftentimes in restrictive covenant cases, that is exactly the procedural posture pending an appeal like this. But if the court were to decide today, for example, that the non solicitation clause is actually applicable and enforceable against Mr. Hamden, that ruling would be prospective rather than retrospective. And because the clock has already run out on the non solicitation clause, we would ask the court to dismiss the appeal as moot with respect to the non solicitation clause. Why don't you address the language that I pointed out with respect to let's take the non solicitation clause first. It's on page 212. Yes, Judge. It says during the term of the franchise agreement and for two years after its termination or after assignment, et cetera, you agree. You will neither directly or indirectly solicit. Yes. We believe that the lower court correctly applied the plain language of the terminology that was used by colors on parade in evaluating whether the non solicitation clause was otherwise triggered by how this contract ended after 15 years. There are. What do you think it means when it says during the term of the franchise agreement and for two years after? Your Honor, we would suggest that what it means is that the non solicitation clause first applies during the 50 or 15 year term. But then it also applies if there's any termination or any assignment or any transfer. The fact that it says both during the term and then a termination assignment or transfer. Notably, the word expiration is not used, but the word expiration is used with meaning at other portions of the agreement. First, Your Honor, turning to a joint appendix one ninety six. This is the first page of the limited franchise rights agreement. And on joint appendix one ninety six under section two, section two is where it states that the term and renewal, the term, of course, will be 15 years and that the agreement itself. The language that's used is the agreements expiration. It's the understanding being that Mr. Hamden, having complied, I look at one ninety six as initial term. The initial term of this agreement shall be for 15 years from the effective date of this agreement. Then you go to page, say, two eleven. This is the disclosure agreement. During the term of the franchise agreement, which is 15 years and thereafter. Yes. You agreed not to communicate. Yes. Now, could it be any clearer? Judge, it could not be any clearer. And in fact, that's the nondisclosure agreement. Yes, Judge. And the nondisclosure agreement has two sentences. The first sentence. Yes, Judge. Dealing with the first sentence. We have never argued. We never asked for relief in the lower court or in our briefs to the court on appeal for relief from the first sentence of the nondisclosure opinion. Well, then it seems to me the court has invalidated that disclosure. And the franchise or is entitled to have a clause enforceable. That's a trade secrets will not be disclosed after termination of the agreement. After the 15 year term. Judge, we completely agree. We absolutely concede that Judge Turk may have erred in writing that Mr. We're left now with a solicitation clause. That's it. Well, Judge, no, we do not concede the second sentence of the nondisclosure provision. Because if you look again at Joint Appendix 211, the first sentence says during the term of the franchise and thereafter. We absolutely concede that Mr. Hamden is bound by that first sentence. That's the only common sense reading of that. Let me ask you something. You have a first sentence that says you're not going to disclose trade secrets and that type of thing for the term of the agreement for two years. There are no all thereafter indefinitely. Yes. Then the next sentence begins after termination. You shall not use any trade secrets. Now, tell me what kind of nonsense would it be to say you get an indefinite privilege to have the franchise or indefinite privilege not to have its trade secrets disclosed, but they could be used. I mean, a trade secret is by its nature indefinite in time. And if you have a secret formula for Coca-Cola and they tell you not to disclose it after you leave Coca-Cola, that's forever. Yes, Judge. And so the first sentence says you can't disclose it and the second sentence says you can't use it. Judge, again, if you look carefully. It's got to make some sense. Yes, Judge. And if you look at the language again on Joint Appendix 211, and that is the fourth paragraph, it says during the term and thereafter, you agree not to divulge or to use for your benefit any trade secrets. So it uses the use language in that first section. And then the second sentence says if there is any termination of this agreement, and it's almost the identical language. So what we think Colors on Parade was doing in this paragraph is covering its bases. Either its trade secrets are protected if, like in this case, Mr. Hamden fulfilled his term and thereafter, or if there's any early termination of this agreement, as defined in Section 8 of the Franchise Agreement, you don't use the trade secrets. So really it's covering its bases, whether there's termination after year one, year two, year three, or if Mr. Hamden does everything he's supposed to and the agreement ends and thereafter won't use trade secrets. Let me read it your way. Let's take the second sentence and says if termination, and you're saying that's termination before the end, not by expiration. Yes, Judge. Let me ask my question. If that sentence means that, then it says you agree you will never use our confidential information or trade secrets. Never. Yes, Judge. Isn't that indefinite? Goes any time beyond that. Judge, again, there are two sentences here. The first sentence is indefinite. Answer my question on the second sentence. Judge, it is indefinite. But it says that second sentence. And the court didn't give them an indefinite protection. Judge, in looking at the court's opinion, what the court said was that Mr. Hamden had fully complied with that nondisclosure provision. That's not possible because the court can't issue a prospective opinion that he has complied forever and in infinity. So we agree, we concede that Mr. Hamden is bound by that first sentence because it says during the term and thereafter. But if you look at the sentence, it's almost identical and it just says also not just during the term and thereafter, but if there's any termination, you have the same obligation not to use our trade secrets. So that doesn't give you any benefit. If you're making the distinction and if there is a distinction, you're still bound by a nondisclosure forever of trade secrets. Yes, Judge, it is a distinction without a difference. However, the rationale that Colors on Parade accepted with respect to the non-competes, that there is a difference between expiration and termination, Judge Turk was just following that to its logical conclusion about if there's any termination, you won't use our trade secrets. Clearly, Mr. Hamden is not going to use any trade secrets. And again, he fixes dents in cars. He's essentially a body shop technician. There aren't really any trade secrets in this case. There really isn't any confidential information. And there's been no allegation by Colors on Parade at any time that he's ever used any confidential information. In fact, what we have from the record is he returned everything at the conclusion of his term. What about Mr. Wynn's argument about the use of the term termination and expiration in that sentence in Section 8? Judge, in turning to that section, first, we would suggest back in Section 2, it says agreements expiration. At the end of the term, the agreements expiration. That term is used there. And again, turning to Section 5, if you look at JA199, in that section, it also references expiration of, excuse me, in JA198. In looking at JA198 under Section 5, it's the third paragraph under use, display, and ownership of commercial symbols. It says, again, you expressly agree that during the term of this agreement and after its expiration. So that term is, it appears to be used differently in this contract. And then if you turn forward to Section 8, there are certain enumerated ways under the section called violation and termination, how this agreement could terminate. And in fact, those terms are used differently. They must mean something different because both of them are used in the title heading on Section 9 in JA203. And we would argue that it would square with common sense. But this isn't like an employment situation where you have somebody that works for two or three years and then has a non-compete. This is a 15-year term. And what we know from prior litigation with Colors on Parade, which, granted, doesn't necessarily apply to the plain language of this contract, is that Colors on Parade in a case in Tennessee had drafted an earlier version of this agreement if there is any termination before the expiration date. But how does, I don't understand how that still gets you around the nondisclosure. The district court, incidentally, did rule on the nondisclosure and made it non-applicable. It says, to the extent, it says, accordingly, the court finds that Hampton has either already complied with the nondisclosure clause, that's turning the materials over, or is not bound by its restrictions because he did not terminate the franchise. But there does not need to be a termination under the nondisclosure clause in your term argument, under your argument. I don't think your argument is necessarily relevant because the language used in the nondisclosure says, during the term of the franchise and thereafter. Yes, Judge. I don't think it could be clearer. And it does not use the word termination. Yes, Judge. And so it seems to me they're entitled to that disclosure and for the solicitation the same thing. That's all we're talking about in this case. Yes, Judge. And we agree that Mr. Hampton is bound by the first sentence where it says, if there is a. . . But the court didn't say so. The court says the nondisclosure is not enforceable. And the court's wording with respect to this part of its ruling said, to the extent there was any termination, then he's not bound by its restrictions. And the only time termination is referenced is in that second sentence. It says, if there is any termination. Clearly, and we would concede. . . And what about the. . . We only have two clauses. We're not talking about this generalized argument. We have the second clause is the solicitation, which is during the term of this agreement and two years thereafter. What's. . . Why isn't that clear? Judge, with respect to the non-solicitation agreement, again, we would suggest, first, that this issue is moot. Second, under the plain language, that termination is not contemplated by expiration, that these terms mean something different in the agreement. But finally, even if the court were to hold that the issue is not moot, and we think it is, even if the court were to hold that the plain language is applicable to Mr. Hamden, we suggest it's not, the non-solicitation provision is nonetheless unenforceable under Virginia law. And Virginia law has evolved. . . Well, that's not been litigated. The court didn't decide whether it's enforceable or not. It just said it wasn't applicable. Judge, we would agree that the court didn't. . . Enforceability is an issue that would still have to be decided, wouldn't it? Whether it's too broad in time or in geographical scope. Judge, we believe that what the Virginia Supreme Court has said in Home Paramount, also in the Omniplex decision in 2005, that the question of the enforceability of a restrictive covenant is a question of law and under questions of law. . . Do you want us to decide that? Judge, we believe that there are sufficient facts in the record to show that this non-solicitation provision is plain. . . Just answer my question, please. The question is, do you want us to address it or do you want the district court to address it? Judge, we want this court to address whether the non-solicitation provision is otherwise unenforceable. All right. Your Honor, first, looking at the enforceability of the non-solicitation provision, it's on JA-212, and it is the first full paragraph at the top of the page. And it says, in relevant part, that they will neither indirectly nor indirectly solicit, induce, divert, or take away any customer. So dealing first with that part of the non-solicit, it doesn't say that he won't solicit, say, paint restoration services. It doesn't say that he shall not solicit competing services, which is what the language the Virginia Supreme Court looked for in Blue Ridge Anesthesia and also in the Motion Systems case. What it says is that he will not solicit, period. There's no qualifier that he won't solicit competing services. And, in fact, if the court were to find that this was enforceable, Mr. Hamden would be prohibited from soliciting all manner of trades, whether they're related to the work that he did or that Colors on Parade performs or not. So the fact that it's any solicitation, we would suggest, makes this plainly unenforceable after the home paramount decision in 2011 by the Virginia Supreme Court. Don't you think customer refers to a customer for that type of services that the franchise covered? Your Honor, we would suggest that, first, customer suggests just simply a person. I understand that argument, but don't you think that it is intended to refer to customers that were developed for the type of services covered by the franchise agreement? Your Honor, turning to, first, the Blue Ridge Anesthesia case. Could you just answer my question, please? Your Honor, it does not refer to only, customer does not limit the solicitation to just those services. What the Virginia Supreme Court has looked for is that, first, it decides what persons can't be solicited, and then it also looks for what solicitations can't be done. And, in this case, it's any solicitation. It is not qualified as competing services. Your Honor, I see that my time is up. I ask for permission to finish my thought. What are you asking permission to do? Just for permission to complete my answer. All right. For the foregoing reasons, the fact that the non-solicitation is moot, that the plain language doesn't apply, that even if it does, the non-solicitation is nonetheless overbroad, we ask that the Court affirm the lower court's opinion and affirm the decision in this case that the restrictive covenants are not applicable to Mr. Hampton. Thank you. All right, Mr. Dean, thank you. Mr. Nguyen? Your Honor, with regard to the issue as to whether or not the court below ruled on the enforceability of the nondisclosure agreement, the court said in three different occasions in its memorandum opinion. The one occasion, Your Honor mentioned, that the court finds that Hampton has either directly complied with the nondisclosure clause or is not bound by its restrictions because he did not terminate his agreement. In the footnote to that same paragraph, the court said, having held that the restrictive covenants in the franchise agreement and non-competition agreement do not apply to Hampton because he did not terminate his franchise agreement, and it goes on in the conclusion at the end of the memorandum opinion, plaintiff did not terminate the franchise agreement, and nor does he perform paint restoration. To use the words, its termination or any termination, those are passive terms. They're not active terms. Its termination and any termination certainly embraces an expiration. A termination is a species of a broader class termination, sort of like humans are a species in the broader class of mammals. I would also like to address, Your Honor, one point that Mr. Hampton raised. He used a word in reading one of these provisions that does not appear, and that is the word early termination. The word early termination doesn't appear in either of these two clauses that are in issue. Whether or not those non-competes may be unenforceable is not an issue for this court. The severability clauses in both of those agreements dispense with that issue as having any bearing on these two standalone issues. In addition, Your Honor, I would like to note that Mr. Hampton did raise this recent Supreme Court case in a recent filing. That's the assurance data case, and we would agree with what Mr. Hampton said in his submission. That is, if the court decides that the restrictive covenants apply to Hampton, which we otherwise maintain they do not, then in light of the assurance decision, Hampton respectfully requests that the court remand the case for further fact-finding on the enforceability of the restrictive covenants. And we'd agree that that would be the appropriate approach. Yes, Your Honor. Do you agree that if you work for me, you've worked for me for five years, and I tell you, you know what? Five years from today, you have to leave. Do you agree I have terminated your contract? In terms of a prospective termination? No, right then. Have I not terminated your work, your contract? I don't believe so, Your Honor. What does terminate mean? It is denotation, not connotation, denotation. It's denotation. All you have to do is look at really any dictionary. Termination refers to an ending, an ending of any kind. It means literally to give something a term. To terminate is to give something a term. If something already has 15 years, it doesn't need to be terminated. It already has a term. Termination means to give something a term. That's what it means, and it's denotation. Now, connotation is all over the place. You mean you're fired? But it really doesn't mean that. If I tell you, if you otherwise had an unlimited employment, but I tell you, no, five years from now, you must leave, then I have terminated your employment. Not ended it, but I have terminated it. That's what the denotation of termination is. Your Honor, I would respect. You disagree with that? I would respectfully disagree, Your Honor, and for this reason. The district court didn't, though. No, and that's why we're here, Your Honor. I completely agree with that. In the employment context, for example, when the employment relationship ends, however it ends, there has been a termination, whether it be resignation, whether it be retirement, whether it be a termination for cause, whether it be by death or disability, whatever the circumstances, that is the termination of employment. It's a passive... Is that inconsistent with what I just said? You can terminate something the next day. Well, Your Honor, I believe... Just because it's immediate doesn't mean it's not termination. If I say you're fired now, I have terminated then. It's instantly. I put a term now. It's over. And I may have misunderstood, Your Honor. I thought you were saying that you were going to terminate, you were telling me that my employment was going to end five years from now. Yeah, but that is termination. I would disagree, Your Honor. I don't believe that the employment relationship is terminated until it actually ends. In other words, the employment relationship would continue until that point in time arose where it did end. Why do you find it so important to get a ruling on that issue of terminate? Because... The clause says during the term of the franchise agreement, that's 15 years, right? And thereafter, you agree not to disclose. Now, why do you need to fight about termination? The district court imputed that that meant something else, but it seems to me when it says during the term of the franchise agreement and thereafter, you agree not to communicate directly or indirectly or divulge trade secrets and that type or use them. I completely agree, Your Honor. The reason we're focused on that term is because the court used that rationale to strike every restrictive covenant. I understand, and you're saying that, but you'd never come back and make your affirmative argument that a contract is construed according to its terms, and you take it holistically and figure out what is being decided there. You don't construe them irrationally unless it's pretty clearly irrationally. But you wrote the contract, didn't you? Your Honor, I did not write this contract. No, your client did. My client wrote this contract. Yes, my client wrote this contract, yes, and with significant input from Mr. Hamden as noted by handwriting. But, Your Honor, the reason we're focusing on this issue, I completely agree. The plain meaning of the language, and we've cited cases in the brief to this effect, clearly indicates that the word termination means an ending of however it might rise. But the two clauses involved here, not the competition and not the other clauses, the two clauses involved here say during the term and thereafter. And it seems to me that with respect to those clauses, it's only logical. The second clause says, of course, after termination, which cuts against you at might, because it may mean termination before the end of the term. But quite apart from that, it's parallel to during the term of this agreement and thereafter. And I don't know how you can construe that by the second thing that says, if there is any termination of this agreement. It seems to me that that could mean one of two things. It could mean if there's a termination by expiration or if there's a termination before term, end of the term. But it then says the same thing as the first sentence. I agree, Your Honor. I absolutely agree. The only reason we're focusing on the distinction between these two terms is because when the court ruled that they are not synonymous, he effectively ruled that they are mutually exclusive. And our point is the terms expiration and termination are not mutually exclusive, and expiration is one form of a broader subset term, termination. And because the word termination appears in the second sentence of the nondisclosure agreement and in the nonsolicitation clause, that's why we're making an issue of it. All right, thank you, Mr. Wigg. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Roger L. Gregory, Henry F. Floyd